UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH RAND,

                      Plaintiff,             Civil Action No. 20-12173

v.                                  Gershwin A. Drain
                                   United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,               David R. Grand
                                   United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

Plaintiff Joseph Rand ("Rand") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Rand is not disabled under the Act is not supported by substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, Rand's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN**

**PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Rand was 59 years old at the time of his alleged onset date of May 18, 2018, and at 6'2" tall weighed approximately 240 pounds during the relevant time period.  (PageID.84, 123, 218, 280).[1]   He completed two years of college in a criminal justice program. (PageID.85, 231).  He was employed as a corrections officer supervisor with the Michigan Department of Corrections from 1996 to 2014, when he injured his shoulder and was moved to a light duty assignment; eventually, he retired in February of 2018 because of his medical conditions.  (PageID.87, 90, 230-31, 250).  He now alleges disability primarily as a result of bilateral shoulder pain, bilateral hand pain, low back pain, and knee pain. (PageID.91-92, 230).

After Rand's application for DIB was denied at the initial level on November 19, 2018 (PageID.143-47), he timely requested an administrative hearing, which was held on September 17, 2019, before ALJ Colleen Mamelka.  (PageID.80-122).  Rand, who was represented by attorney Donald Shiffman, testified at this hearing, as did vocational expert ("VE") Joanne Pfeffer.  (*Id.*).  On October 28, 2019, the ALJ issued a written decision finding that Rand is not disabled under the Act.  (PageID.65-75).  On July 17, 2020, the

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 9.

Appeals Council denied review.  (PageID.45-50).  Rand timely filed for judicial review of the final decision on August 13, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Rand's medical record,[2] function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.      The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[2] Although Rand's challenge to the ALJ's finding of non-disability is primarily legal in nature, some discussion of his medical history bears mentioning.  X-ray findings from February and March of 2018 show osseous or arthritic changes suggesting arthritis of the hands, primarily involving the interphalangeal joints; mild scoliosis and multilevel spondylosis of the lumber spine; and minimal degenerative changes in the left shoulder.  (PageID.352-55).  He has undergone physical therapy for his hands and wrists, back, and both shoulders (PageID.363, 378, 418, 473); has received numerous injections in his hands and shoulders (PageID.360, 467, 511, 545, 547, 548, 551); has undergone multiple surgeries on both shoulders (PageID.53-54, 360, 426); has undergone an L4-L5 laminectomy in the past (PageID.360); and had a total right knee replacement in 2010 and right hip surgery in 2012 (PageID.480).  Additionally, an August 2019 MRI revealed a torn meniscus in his left knee.  (PageID.589).

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Rand is not disabled under the Act.  At Step One, the ALJ found that Rand has not engaged in substantial gainful activity since May 18, 2018 (the alleged onset date).  (PageID.67).  At Step Two, the ALJ found that he has the severe impairments of lumbar spondylosis with post-laminectomy syndrome, degenerative joint disease, carpal tunnel syndrome, left shoulder impingement,

4

a left medial meniscus tear with partial tearing of the proximal medial collateral ligament, osteoarthritis, and histories of a total right hip replacement and right knee replacement. (PageID.67-68).   At Step Three, the ALJ found that Rand's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.69).

The ALJ then assessed Rand's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following limitations: can frequently balance, handle, and finger; can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead; cannot climb ladders, ropes, or scaffolds; and can have no exposure to unprotected heights or dangerous moving machinery.  (*Id.*).

At Step Four, the ALJ found that Rand is capable of performing his past relevant work as a head corrections officer, as generally performed.  (PageID.74).  As a result, the ALJ concluded that Rand is not disabled under the Act.  (PageID.75).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court

looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

D.     **Analysis**

In his motion, Rand raises only one issue, which concerns the VE's testimony and the ALJ's conclusion – based on that testimony – that Rand could perform his past relevant work as a head corrections officer, as generally performed.  (ECF No. 11, PageID.607-11).

As was noted at the hearing, the Dictionary of Occupational Titles ("DOT") classifies the job of head corrections officer as a "light" job.  (PageID.114).  *See* DOT 372.137-010.  In her decision, the ALJ found that Rand can perform a reduced range of light work, a finding that Rand does not challenge.  In keeping with the DOT's classification, the VE testified that an individual with Rand's RFC could perform the job of head corrections officer as it is *generally* performed (but not as he *actually* performed it).  (PageID.118-19).  In turn, and in accordance with this testimony, the ALJ determined that Rand was not disabled under the Act because he could perform his past work as a head corrections officer as it was generally performed.  (PageID.74-75).

Rand now challenges this finding, pointing to the VE's testimony that he could not perform his past work as *actually* performed because it involved assisting with physically managing inmates at times, which would potentially bring it up to the "heavy" exertional level.  (PageID.114, 116, 118).  A review of the hearing transcript makes clear that the VE based her conclusion in this respect on certain key aspects of Rand's testimony, primarily the fact that his job included physically managing and helping restrain inmates – which involved "wrestl[ing] a lot" – as well as getting inmates out of their cells and putting them in their cells.  (PageID.108-09, 116, 118-19).

In his motion, Rand argues that the VE's testimony conflicts with the information

contained in the DOT, which provides the following job description for a head corrections

officer:

> Supervises and coordinates activities of CORRECTION OFFICERS (government ser.): Conducts roll call of officers and issues duty assignments.  Directs release or transfer of prisoners based on court order instructions.   Investigates and reports causes of inmate disturbances, such as assaults, fights, and thefts.  *Assists subordinates with unruly inmates and other assignments.*  Maintains prison records and prepares reports.   Reviews work records of subordinates to evaluate efficiency and suitability for assignments.

https://occupationalinfo.org/37/372137010.html (last accessed June 7, 2021) (emphasis

added).  According to Rand, because the DOT lists the requirement of assisting with unruly

inmates within the general job description for this position, despite the job overall being

classified as "light," there is a conflict between the DOT and the VE's testimony that Rand

could not perform that portion of his prior work because physically managing and

restraining inmates was "heavy" work (PageID.114, 116, 118),[3] which "raises a substantial

question as to whether Rand's RFC would allow him to return to his past relevant work as

a corrections officer even as *generally* performed."  (ECF No. 11, PageID.608) (emphasis

in original).  The Court agrees.

---

[3] Although in one instance the VE testified that physical management of inmates would be "up to heavy, potentially heavy" work (PageID.116), in two other instances, the VE testified that the physical management of inmates "would" constitute "heavy" work.  (PageID.114 ("while [Rand] was managing inmates, *that would put him* into the heavy range"); PageID.118 ("having to assist in the management of inmates . . . *that would put him* at the heavy [level]") (emphasis added)). The Commissioner cannot prevail by ignoring the latter testimony and citing only to the one instance that is beneficial to his argument.  (ECF No. 13, PageID.617 ("the vocational expert ("VE") testified that [Rand] performed the job (potentially) up to the heavy exertional level"); PageID.622 ("The VE testified that [Rand] could not perform his past work as actually performed because it involved physically managing inmates at times, which would bring it up (potentially) to the heavy exertional level"); PageID.625 ("the VE testified that the job *potentially* went up to the heavy exertional level" (emphasis Commissoner's)).

As set forth above, the DOT specifically states that the head corrections officer job requires "[a]ssist[ing] subordinates with unruly inmates and other assignments." *See* DOT 372.137-010. The VE testified at the hearing on two separate occasions that the requirement of restraining and/or assisting in physically managing inmates "would" place this job into the heavy category of exertion (and on one occasion that such work would be "up to heavy, potentially heavy"), which would be precluded based on the ALJ's finding that Rand has the RFC for only light work. (PageID.114, 116, 118). The Commissioner attempts to counter this inconsistency, arguing that, according to Rand's own testimony, his job – as actually performed – involved interactions with inmates that "[c]learly … went beyond 'assisting' with unruly inmates as contemplated by the *DOT*, otherwise the *DOT* would not classify this job as light." (ECF No. 11, PageID.623). The Commissioner then asserts – without citation or legal support – that "the *DOT* obviously does not contemplate this level of assistance." (*Id.*, PageID.625). The problem with the Commissioner's argument on this point is that it ignores the fact that the VE used the exact phrasing contained in the DOT – the need to "assist" with unruly inmates – when describing and categorizing Rand's past work duties, and explained that the need to assist with the management of inmates "would" place the job in the heavy category. (PageID.116, 118; *see also supra* at 8 n.3). Specifically, Rand testified that, before a shoulder injury resulted in his placement in a light duty position, "there was, you know, a lot of inmate contact with disruptive inmates." (*Id.*). Immediately thereafter, the VE testified:

> A.     … but again, before he was injured, *he said he was having to assist in the management of inmates. So, that would put him at the heavy. So as performed no.*

> Q.      Okay.
>
> A.      *But per the DOT it appears yes.*

(PageID.118-19) (emphasis added).  Comparing the VE's testimony, then, with the DOT's

description of the head corrections officer job as including "[a]ssisting subordinates with

unruly inmates and other assignments[,]" there does not appear to be any meaningful

distinction between the VE's description of what constitutes "heavy" exertional work and

what the DOT describes as a requirement of that job.  Therefore, an apparent conflict arose

between the VE's testimony that this job requirement would place the job in the heavy

category and the DOT's categorization of this job as light.

Rand argues that the ALJ "committed further error in failing to inquire whether there

were any conflicts at the hearing" between the VE's testimony and the DOT, as required

by Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  (ECF No.

11, PageID.608-09).  SSR 00-4p provides as follows:

> Occupational evidence provided by a VE [] generally should be
> consistent with the occupational information supplied by the DOT.
> When there is an apparent unresolved conflict between [VE
> testimony] and the DOT, the adjudicator must elicit a reasonable
> explanation for the conflict before relying on the [VE testimony] to
> support a determination or decision about whether the claimant is
> disabled.  *At the hearings level, as part of the adjudicator's duty to*
> *fully develop the record, the adjudicator will inquire, on the record,*
> *as to whether or not there is such consistency.*

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  The Sixth Circuit and this court

also have recognized the "affirmative duty" placed on ALJs to ask VEs if the evidence that

they have provided "conflicts with [the] information provided in the DOT."  *Lindsley v.*

*Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (internal quotations omitted); *see*

*also Spivey v. Comm'r of Soc. Sec.*, No. 12-10207, 2014 WL 1943663, at *4 (E.D. Mich. May 9, 2014) ("If the ALJ uses a VE, the ALJ should inquire whether the [VE's] testimony is consistent with the DOT and obtain a reasoned explanation for any conflicts between the two sources.") and *Staymate v. Comm'r of Soc. Sec.,* 681 F. App'x 462, 468 (6th Cir. 2017) ("[A]n ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence conflicts with the information provided in the DOT, and to resolve any apparent conflicts.") (internal quotations omitted).

Here, there is no dispute that the ALJ did not inquire into any apparent conflicts between the VE testimony and the DOT at the hearing.   And, contrary to the Commissioner's argument (ECF No. 11, PageID.624-25), this case is different from others where the VE merely provided testimony that an individual could return to his past work as actually (as opposed to generally) performed; in such cases, courts have found that such testimony cannot "conflict" with the DOT.  *See Spivey*, 2014 WL 1943663, at *5.  Here, the VE's testimony went beyond simply categorizing how Rand performed his past work – instead, the VE specifically testified that the duty to assist with unruly inmates placed this job in the heavy category and, therefore, he could not return to this work as performed. (PageID.118-19).   But, contrary to the VE's testimony that it "appear[ed]" he could perform this work per the DOT, the DOT job description clearly lists "[a]ssist[ing] subordinates with unruly inmates" as a job requirement for this position.  Again, this reflects an actual conflict between the categorization of the job as light in the DOT and the DOT's description of this work, according to the VE – a conflict that simply was never

11

meaningfully addressed at the hearing.[4]   As this Court has recently recognized, "if it is unclear whether the VE testimony and DOT actually conflict, but there is sufficient argument that a potential or apparent conflict may exist, remand for the ALJ to explore and resolve the potential or apparent conflict is needed." *Hamilton v. Comm'r of Soc. Sec.*, No. 20-11033, 2021 WL 1520007, at *8 (E.D. Mich. Mar. 31, 2021) (citing cases).   That is clearly the case here.

In the end, the conflict presented between the VE's testimony regarding the head corrections officer position and the DOT's description of this job prevents the Court from finding that the ALJ's decision is supported by substantial evidence.   This is particularly so given the fundamental importance of this issue to the ALJ's ultimate conclusion in this case.   On such a significant issue, it is crucial that the ALJ question the VE regarding any conflicts so that both are satisfied that the claimant's past work has been fairly and properly categorized.   Accordingly, remand is warranted.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's

---

[4] The Commissioner argues that to the extent Rand faults the ALJ for failing to resolve the "actual conflict" between the categorization of this job as light in the DOT, and the DOT's description of this work, it was incumbent on him to inquire further. (ECF No. 13, PageID.626).  But, SSR 00-4p places this duty squarely on the ALJ, saying, in relevant part, "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency [between the VE evidence and the DOT]."  SSR 00-4p, 2000 WL 1898704, at *2.  Moreover, the very case cited by the Commissioner in support of this argument recognizes that *it is the ALJ who is bound to make the initial inquiry* regarding conflicts between the VE's testimony and the DOT.  (ECF No. 13, PageID.626) (citing *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) ("[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony *beyond the inquiry mandated by SSR 00-4p*.") (internal citations omitted) (emphasis added)).

Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, Rand's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: June 7, 2021                         s/David R. Grand
Ann Arbor, Michigan                      DAVID R. GRAND
                                                       United States Magistrate Judge

### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response

should be concise, and should address specifically, and in the same order raised, each issue

presented in the objections.

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 7, 2021.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager